REINHARD J. MILLER *et al.*, Plaintiffs-Appellees, *v.* GEORGE BLOOMBERG
*et al.*, Defendants-Appellants.

(No. 73-306; )

Second District (2nd Division)—March 10, 1975.

*Rehearing denied March 25, 1975.*

Edward T. Graham, of Glen Ellyn, and John E. Waghorne, of Addison, for appellants.

Cox, Lyle & Darrah, of Glen Ellyn (Delbert S. Lyle, of counsel), for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is an action seeking specific performance of an agreement to sell real estate pursuant to an option contained in a lease. The plaintiff lessees moved for summary judgment, and the defendant lessors by answers to the motion admit that there is no material issue of fact in the cause and that the cause may be disposed of by a determination of the legal issue involved, to-wit: Whether the remedy of specific performance will lie to enforce the sale of real estate at the *"then prevailing market price"* when no method is specified in the contract by which such price is to be determined. The Circuit Court of Du Page County ordered specific performance and defendant lessors appeal.

On June 26, 1969, the parties entered into a lease covering certain premises in Bloomingdale, Illinois. The tenant entered into possession and continued to occupy the premises and to pay rent therefor.

Article 9 of the lease contained the following provision:

"9. At any time during the original term of this lease or any extension thereof or any tenancy thereafter, lessee shall have the option to purchase the premises for the then prevailing market price."

On February 3, 1972, the tenants gave written notice to landlords exercising their option to purchase as provided by the terms of the lease. Shortly thereafter the landlords, by their attorney, told the tenants that a market value appraisal of the premises had been ordered. The tenants also procured an independent market value appraisal on the property. On May 3, 1972, after receiving an appraisal report from the landlord, the tenants offered the sum of $80,000 for the property. The offer was rejected.

The sole argument before the trial court and before this court is that the agreement is not capable of specific performance due to the lack of a definitive purchase price. In this regard we are called upon to determine whether or not the use of the "prevailing market price" as the method for computing the agreed upon purchase price is sufficiently definite to sustain an action for specific performance.

■■ At the outset it should be noted that price is an essential ingredient of every contract for the transfer of property and must be sufficiently definite and certain or capable of being ascertained from the contract between the parties, in order to make the contract capable of enforcement. (71 Am. Jur. 2d *Specific Performance* § 37 (1973); *Hanlon v. Hayes*, 404 Ill. 362.) However, where a contract specifies that the price is to be measured by the "fair market value," "reasonable value" or "current market value" of the services or the property involved, courts have generally held that the price is sufficiently certain in order to have

20

an enforceable obligation. (See 1 Williston Contracts § 41 (3d ed. 1957); Annot., 2 A.L.R. 3d 701 (1965); *Portnoy v. Brown* (1968), 430 Pa. 401, 243 A. 2d 444; Frye, Treatise on Specific Performance of Contracts § 219 (Schuyler 2d Amer. ed. 1871).) Here the parties provided that the option price would be determined by the "prevailing market price." This provision, in our opinion means fair market value and meets the necessary standards required by law with respect to the certainty of the purchase price so as not to preclude specific performance of the agreement.

As applied to this case we see no distinction between "prevailing market price," "fair valuation price," "fair market value," or "current market value." Ballentine's Law Dictionary, Third Edition, page 778, 55 C.J.S. *Market Price* 786-800 (1948).

The earliest Illinois case on point appears to be *Estes v. Furlong*, 59 Ill. 298, where the term "fair valuation price" was held sufficient.

The court said:

> "The contract provided that there should be a fair valuation of the dwelling and stable. This implied a reasonable estimate, to be made by the parties; or, if they could not agree, to be determined by the court upon proof.
>
> The purchaser acted in a reasonable manner, and was willing to abide a fair valuation. He even incurred the expense of the services of a builder to ascertain the price.
>
> On the contrary, the conduct of the vendor was reprehensible and unreasonable. After having agreed to take a fair valuation, he obstinately assumed a gross sum, as the value, and refused to yield to the opinion or appraisement of other persons.
>
> Here, then, was a substantial contract for the sale of this land, at a fair price. The time of payment is specifically fixed, the quantity of land easily ascertained, and the price thereof determined. The mode of ascertainment of the value of the buildings, though indicated in the agreement, is not definitely settled, and did not become an essential ingredient in the contract. It is entirely subsidiary.
>
> The purchaser did everything which was required of him. He tendered in apt time a fair price, which was refused.
>
> Upon a bill filed for specific performance, under such circumstances, the court must determine the value upon proof. * * *
> * * *
>
> Specific performance of a contract, to sell at a fair price or fair valuation, will be enforced. * * *" 59 Ill. 298, 303-304.

Thereafter in *Hayes v. O'Brien*, 149 Ill. 403, 414, the term "the same price per acre as any other person or purchaser might have offered

therefor" was held not void for uncertainty. The court cited *Estes v. Furlong* as authority.

In *Folsom v. Harr*, 218 Ill. 369, 372, the lease contained the following language: "Should said party of the first part conclude to sell this property, then said second party is to have the first chance to buy the same." The landlord had thereafter contracted to sell the property to a third party for a definite price. The tenant offered the same amount, was refused and brought his complaint for specific performance. The court found that the contract did not appoint any method by which the price should be determined and was therefore unenforceable. The court in no way overruled *Hayes v. O'Brien*, as was pointed out in *Scheidecker v. Westgate*, 164 Ill.App. 389, 390, where the language was, "the privilege to purchase said premises at the price for which the same could be sold to other parties." The court followed *Hayes v. O'Brien* and distinguished *Folsom v. Harr*.

In *Wilson v. Singleton*, 410 Ill. 611, a lease provided that the lessee was granted an option to purchase the premises in case a sale of them should become desirable. The lease provided for notice to the tenant of any bona fide offer, and he had 30 days to meet the offer if he so desired. The lease stated specifically that the intent and purpose of the lease was to give the tenant the first opportunity to purchase whenever any sale was contemplated. The court specifically recognized the rule of *Hayes v. O'Brien* and followed the law of that case.

In the case at bar, both parties used the most common method of determining prevailing market price, a certified real estate appraiser, and the option was exercised on the basis of the highest appraisal obtained, that of the landlord.

■■ We are of the opinion that specific performance of the contract should be enforced. The judgment of the Circuit Court of Du Page County is therefore affirmed, and the cause is remanded for taking of proof to establish the "then prevailing market price" and for further proceedings in the case.

Affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.